# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:10-CV-0293-RJC-DCK

| | |
|---|---|
| **ROBERT JACK BREWER, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| **BRAND ENERGY SOLUTIONS, LLC,** ) | |
| **and BRAND ENERGY AND** ) | |
| **INFRASTRUCTURE SERVICES, INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Stay Proceedings And To Compel Arbitration Of Plaintiff's Original Complaint" (Document No. 3). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will grant the motion.

## I. BACKGROUND

On or about June 1, 2010, Plaintiff Robert Jack Brewer, Jr. ("Plaintiff" or "Brewer") filed a "Verified Complaint" (Document No. 1-1) in the Superior Court of Mecklenburg County, North Carolina. The Complaint seeks relief related to alleged breach of employment contract, wage and hour claims, retaliatory employment discrimination, and wrongful termination of employment. (Document No. 1-1). On July 1, 2010, Defendants Brand Energy Solutions, LLC and Brand Energy And Infrastructure Services, Inc. ("Defendants" or "Brand Energy") filed their "Notice Of Removal" (Document No. 1) to this Court. On July 7, 2010, "Defendants' Motion To Stay Proceedings And To Compel Arbitration Of Plaintiff's Original Complaint" (Document No. 3) was filed. Plaintiff

have since filed a response in opposition, and Defendants have filed a reply in support of the motion. (Document Nos. 9, 10). The pending motion is fully briefed and ripe for review.

## II. DISCUSSION

The issue before the Court is whether the parties' dispute should be resolved through the instant litigation or through Defendants' Dispute Resolution Program. (Document Nos. 3, 3-1). The underlying dispute relates to Plaintiff's employment with Defendants, and most specifically, his hours worked, recorded and compensated. Purportedly, Defendants terminated Plaintiff on or about June 19, 2009, "because he had claimed too many overtime hours." (Document No. 9, p.3).

Defendants contend that: (1) "Plaintiff agreed as a condition of his employment to resolve any disputes arising out of his employment or cessation of employment through Defendants' Dispute Resolution Program;" (2) "Defendants' Dispute Resolution Program provides for binding arbitration . . . to resolve all claims Plaintiff would otherwise have a right to litigate in court;" (3) "terms of the Dispute Resolution Program . . . clearly embrace all claims brought by Plaintiff in this lawsuit;" and (4) "further proceedings on Plaintiff's Complaint must be stayed and all claims deferred to arbitration under the Dispute Resolution Program." (Document No. 3).

In support of their motion, Defendants cite and attach the "Brand Equal Opportunity Policies Dispute Resolution Program and Team Member Hot Line" (Document No. 3-1) which provides in part:

> I understand and agree as a condition of my employment and/or continued employment: to resolve any disputes arising out of or related to my . . . employment, and or cessation of employment, through the Brand Resolution Program, for Brand Services, Inc. and its subsidiaries. I understand this Dispute Resolution Program provides for binding arbitration as the exclusive, final and required method to resolve all covered claims that I would otherwise have a right to litigate in court. . . . by my signature below I acknowledge that I have received and agree to comply . . . including consenting to

2

>     arbitration under FAA....

(Document No. 3-1, p.3). The document is signed by Robert J. Brewer, Jr. and dated March 17, 2006. Id. Defendants contend that Plaintiff failed to comply with his agreement to arbitrate by filing this lawsuit on June 1, 2010. (Document No. 4, pp. 4-5). Plaintiff makes several arguments that arbitration is not appropriate pursuant to North Carolina law and that Defendants have failed to timely and properly seek arbitration. (Document No. 9).

**A. North Carolina Law**

First, Plaintiff contends that the North Carolina Wage and Hour Act, N.C.G.S. §§ 95-25.1 *et seq.*, and the North Carolina Retaliatory Employment Discrimination Act, N.C.G.S. §§ 95-240 *et seq.*, permit his action brought in the North Carolina state court. (Document No. 9, p.5). Defendants concede that these Acts provide a right to proceed in state court, but argue that the Acts do not compel an employee to file in state court, nor does either Act foreclose or prohibit arbitration. (Document No. 10, p.4). Plaintiff has cited no authority, and the undersigned is aware of none, that establishes that either Act precludes a valid agreement to arbitrate.

Next, Plaintiff relies on the North Carolina Uniform Arbitration Act, N.C.G.S. §§ 1-567.1, *et seq.*, for its argument that North Carolina arbitration law excludes disputes between employers and employees. (Document No. 9, p.9). Plaintiff's reliance on this statute is misplaced since it was repealed, effective January 1, 2003. The Revised Uniform Arbitration Act, N.C.G.S. §§ 1-569.1 *et seq.*, governs agreements to arbitrate made on or after January 1, 2004. N.C.G.S. § 1-569.3(a). The Revised Uniform Arbitration Act does not appear to prohibit arbitration agreements between employers and employees. Moreover, the Revised Act provides in pertinent part that on a motion "showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement . . . the court shall proceed to summarily decide the issue and order the parties to

3

arbitrate unless it finds there is no enforceable agreement to arbitrate." N.C.G.S. § 1-569.7(a).

Plaintiff also contends that according to Bernhardt v. Polygraphic Company of America, Inc., 350 U.S. 198 (1956), for the Federal Court to allow arbitration, where the state court would disallow it, is impermissible. (Document No. 9, p.9). As noted above, Plaintiff's arguments that North Carolina state courts would not allow arbitration appear to be misplaced, and therefore this argument fails.

Plaintiff cites Bernhardt for the additional argument that "Defendants' failures to show the connection between Plaintiff's employment activity in North Carolina with interstate commerce" somehow defeats a demand for arbitration. Id. at pp.8-10. Defendants respond that § 2 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") "makes enforceable a written arbitration provision in 'a contract *evidencing* a transaction *involving* commerce'" and must be broadly construed. (Document No. 10, p.3)(citing Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265 (1995). Defendants argue that the proper inquiry is not Plaintiff's engagement in interstate commerce, but the employer's. Id. at p. 4 (citing Bettencourt v. Brookdale Senior Living Communities, Inc., 2010 WL 274331 at *3 (D.Or. Jan.14, 2010); Moye v. Duke Univ. Health System, Inc., 2007 WL 1652542 at *2 (M.D.N.C. June 5, 2007). There appears to be no dispute that Defendants engage in interstate commerce. Based on Defendants' arguments and cited authority, the undersigned finds that Plaintiff's contention on this point also fails.

**B. Arbitration Agreement**

Plaintiff further argues that Defendants failed to properly and timely seek arbitration. (Document No. 9, pp.5-8). Plaintiff contends that because N.C.G.S. § 95-243 provides that a civil action asserting a claim must be commenced by employee within 90 days of the right to sue letter,

> [i]f Defendants wanted this dispute to be the subject of arbitration,

4

> Defendants were required to have provided written notice to the Plaintiff and initiated an arbitration proceeding before the American Arbitration Association related to this dispute within 90 days after March 4, 2010.

(Document No. 9, pp. 6-7). Plaintiff relies on Adams v. Nelsen, 313 NC 442 (1985), for support of its argument that Defendants here failed to seek arbitration within the applicable statute of limitations. Id. pp. 7-8. The undersigned is not persuaded that Defendants had a deadline of March 4, 2010 to pursue arbitration.

As Defendants note, Plaintiff cites no case holding that a statutory provision authorizing an employee to file suit within 90 days requires an employer to request arbitration within the same time period. (Document No. 10, p. 5). Defendants cite the FAA, 9 U.S.C. § 4, and the North Carolina Revised Uniform Arbitration Act, N.C.G.S. § 1-569.7, for their position that a motion to compel arbitration was the proper response to Plaintiff's lawsuit. Id. at p.6. Moreover, the undersigned observes that Defendants timely removed Plaintiff's lawsuit to this Court, and within a week of removal filed their motion to compel arbitration. Once it was clear that there was a dispute and that Plaintiff was seeking relief through litigation rather than the Brand Dispute Resolution Program, Defendants gave prompt notice that they believed arbitration was required.

**C. Policy**

In further support of their motion, Defendants assert that both federal and state policy strongly favor arbitration. (Document No. 4, p.6). Plaintiff's response does not address this argument. The undersigned observes that relevant precedent in this Court, as well as in the North Carolina courts, indicates a policy strongly favoring arbitration. This Court has recently opined:

> The Federal Arbitration Act ("FAA") establishes a policy favoring the enforcement of written agreements to arbitrate. Specifically, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to stay the proceeding and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. 9 U.S.C. § 3.
. . .
The Supreme Court has held that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). "Pursuant to that liberal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone, 460 U.S. at 24-25; see also Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir.2001); Long v. Silver, 248 F.3d 309, 315-16 (4th Cir.2001); O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir.1997). The Fourth Circuit has stated that

> [T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. Thus, we may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Long, 248 F.3d at 315-16 (internal citations omitted).

International Bottled Water Ass'n v. Eco Canteen, Inc., 3:09-CV-299-RJC-DSC, 2010 WL 771872 at *6 (W.D.N.C. March 5, 2010).

Even more recently, the Court of Appeals of North Carolina has affirmed the state's approach to motions to compel arbitration as follows:

> The determination of whether a dispute is subject to arbitration involves a two pronged analysis; the court must ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether "the specific dispute falls within the substantive scope of that agreement."

6

> > Raspet v. Buck, 147 N.C.App. 133, 136, 554 S.E.2d 676, 678 (2001) (quoting PaineWebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir.1990)).
>
> . . .
>
> > In so doing, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." This is so because public policy in this State, like federal policy, favors arbitration. Because federal policy and the policy of this State are the same in this regard, it is appropriate to look to federal cases for guidance in determining whether plaintiff's claims fall within the scope of the arbitration clause.
>
> Rodgers Builders, Inc. v. McQueen, 76 N.C.App. 16, 23-24, 331 S.E.2d 726, 731 (1985) (citing Coach Lines v. Brotherhood, 254 N.C. 60, 67-68, 118 S.E.2d 37, 43 (1961), and quoting Cyclone Roofing Co. v. LaFave Co., 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 29 (1986)).

Ellison v. Alexander, 700 S.E.2d 102, 105-106 (N.C.App. 2010).

Under the facts presented in this case, the undersigned is persuaded that the parties had a valid agreement to arbitrate, that the specific dispute falls within the scope of that agreement, and that Plaintiff has failed to establish sufficient cause to set aside the clear policy of both the state and federal courts favoring arbitration.

### III. CONCLUSION

Based on the foregoing, the undersigned finds that Plaintiff's opposition to the pending motion to compel arbitration fails to provide sufficient grounds to deny the motion. It appears that Plaintiff entered into a valid agreement requiring him to pursue his grievances against Defendants through their Dispute Resolution Program, including arbitration.

**IT IS, THEREFORE, ORDERED** that "Defendants' Motion To Stay Proceedings And To Compel Arbitration Of Plaintiff's Original Complaint" (Document No.3) is **GRANTED** and that this matter is **STAYED** pending the parties completion of arbitration.

**IT IS FURTHER ORDERED** that the parties shall file a stipulation of dismissal or a status report in this matter, on or before **December 31, 2010**.

Signed: November 18, 2010

David C. Keesler
United States Magistrate Judge